STATE OF NEBRASKA ET AL., APPELLEES AND CROSS APPELLANTS, v. CITY BETTERMENT CORPORATION, A CORPORATION, APPELLANT AND CROSS-APPELLEE.

250 N. W. 2d 601

Filed February 9, 1977. No. 40619.

Frederick S. Cassman of Abrahams, Kaslow & Cassman, for appellant.

Paul L. Douglas, Attorney General, and Melvin K. Kammerlohr, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCown, J.

This is a declaratory judgment action brought by the State of Nebraska and the County of Douglas against City Betterment Corporation to declare a series of lotteries operated by the defendant corporation unlawful, and to permanently enjoin their operation. The District Court decree found the lotteries in violation of law and permanently enjoined the defendant, City Betterment Corporation, from further conducting any lot-

teries in the State of Nebraska. City Betterment Corporation has appealed, and the State and County have cross-appealed.

The facts require some constitutional and statutory background. Until 1968, Article III, section 24, of the Constitution of Nebraska provided: "The Legislature shall not authorize any game of chance, nor any lottery, or gift enterprise where the consideration for a chance to participate involves the payment of money for the purchase of property, services, chance or admission ticket, or requires an expenditure of substantial effort or time; * * *." In 1968, the voters adopted an amendment to that section which reads: "Provided, that it may authorize and regulate other lotteries, raffles, and gift enterprises which are intended solely as business promotions or the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises. * * *."

In 1969, acting under the authority of the amendment, the Legislature enacted sections 28-964.01 to 28-964.05, R. R. S. 1943. The first section provides that, except as specifically authorized by those sections, it is unlawful for any person to operate any lottery. Section 28-964.03, R. R. S. 1943, provides: "Any bona fide nonprofit organization whose primary activities are conducted for charitable and community betterment purposes may conduct lotteries, raffles, and gift enterprises when the proceeds of such activities are used solely for charitable or community betterment purposes and the awarding of prizes to participants."

In 1972, a group of Omaha citizens organized the Central Business District Task Force to combat the deterioration of downtown Omaha. That group financed professional studies and considered various ways of revitalizing the downtown area. Having focused on a "super block" proposal and finding that tax funds for the project were insufficient, it was proposed that a

lottery be established for the purpose of providing "seed money" to attract private investment. As an outgrowth of that idea, City Betterment Corporation was incorporated on April 15, 1975, under the Nebraska Nonprofit Corporation Act. The corporation was to be operated "exclusively for charitable and educational purposes, including in particular for the charitable or community betterment purposes of the downtown area of Omaha, Nebraska." The net income of the corporation was to be distributed one-half to the City of Omaha for its community betterment purposes and one-half was to be expended by the corporation for charitable or community betterment purposes within the downtown area of Omaha, Nebraska. The District Court specifically found that the City Betterment Corporation was a bona fide nonprofit organization whose stated purposes were for charitable and city betterment purposes, and that finding is not challenged here.

The board of directors of the Community Betterment Corporation borrowed approximately $200,000 and hired some 15 employees to commence the operation of a lottery. Office space was leased, a public relations firm was hired, and an agreement was entered into with Systems Operations, Inc., to provide computer programs and technical advice and services. Numerous Omaha banks agreed to distribute lottery tickets for 1 percent of the ticket proceeds. Various Omaha businesses also agreed to sell tickets for a 5 percent commission. City Betterment Corporation also incurred other business expenses in connection with the lottery, including printing costs, and telephone and other utilities.

In September 1975, the Big Green lottery commenced operation with the first drawing for winners held on October 2, 1975. The lottery operated for approximately 4 months until its operation was enjoined by the District Court in this action on January 16, 1976. None of the net income or proceeds from the operation

of the lottery had been distributed to charitable and community betterment projects at the time of trial, although committees had been appointed to select projects to receive the proceeds.

The declaratory judgment action here was filed on October 6, 1975, and trial was held in early January 1976. On January 16, 1976, the District Court entered its decree. The court specifically found that City Betterment Corporation was a bona fide nonprofit corporation whose stated purposes are for charitable and city betterment purposes; and that the sole function and activity of the corporation since its existence had been the organization and operation of the lottery. The court also made conclusions of law: (1) That the term "proceeds" used in the constitutional amendment and the implementing statutes means net proceeds and not gross proceeds, and that a bona fide nonprofit qualified organization may therefore incur reasonably necessary expenses incident to the organization and operation of a lottery; (2) that the "promoter" of a lottery within the meaning of the constitutional amendment means only the organization conducting the lottery and does not include the individual employees or agents or independent contractors retained by the organization to provide services; and (3) that an organization whose only activity is the operation of a lottery is not an organization whose primary activities are conducted for charitable and community betterment purposes notwithstanding the intended use of the proceeds is solely for charitable or community betterment purposes. The District Court therefore concluded that City Betterment Corporation was not an organization whose primary activities are conducted for charitable or community betterment purposes and therefore is not an organization that may conduct a lottery pursuant to section 28-964.03, R. R. S. 1943. On those findings of fact and conclusions of law the court decreed the lotteries in violation of law and enjoined the defendant from

further conducting any lottery in the State of Nebraska.

City Betterment Corporation has appealed from that portion of the decree finding that it is not an organization whose primary activities are conducted for charitable or community betterment purposes and therefore not an organization that may conduct a lottery. The State and County have cross-appealed from those portions of the decree finding that the term "proceeds" as used in the constitutional amendment and implementing statutes means net proceeds and not gross proceeds, and from the determination that the "promoter" of a lottery means only the organization conducting the lottery and does not include employees, agents, or independent contractors providing services for profit.

The crucial issue on this appeal turns on an interpretation of the language of section 28-964.03, R. R. S. 1943, "any bona fide nonprofit organization whose primary activities are conducted for charitable and community betterment purposes may conduct a lottery * * *." The meaning of the term "primary activities" is the focal point for determining the intent of the Legislature and that term is found only in the statute and not in the constitutional amendment. A statute should be construed in the context of the object sought to be accomplished, the evils and mischief sought to be remedied, and the purpose to be served. State v. Nance, ante p. 257, 248 N. W. 2d 339.

Traditionally in Nebraska lotteries have been forbidden. The Constitution of Nebraska still forbids any lottery except a lottery specifically authorized by the Legislature within the limitations of Article III, section 24. Under the 1968 amendment, the Legislature cannot authorize any lottery beyond the specific scope of the constitutional permission. The Legislature may refuse to authorize any lottery, or it may impose limits or restrictions, or qualifications upon the operation of a

lottery it authorizes. The legislative history of the 1969 statutes implementing the provisions of the constitutional amendment is not clear. Constitutional and statutory provisions from other states are not of much assistance because of their great variation in language and because of the fact that none are even reasonably comparable to our own. In Nebraska, however, unless a lottery is conducted and operated within the specific limits and terms of a statutory authorization, it is illegal.

In section 28-964.03, R. R. S. 1943, the Legislature has imposed some major requirements which must be met before an organization is authorized to operate a lottery. The first is that it must be a bona fide nonprofit organization. That requirement is admittedly met here. The second is that its "primary activities" are conducted for charitable and community betterment purposes. If an organization meets those two requirements, then, and only then, is it authorized to conduct a lottery, and even then only when the proceeds of the lottery activities are used solely for charitable or community betterment purposes. When the Legislature required that the "primary activities" of a qualified organization are to be conducted for charitable and community betterment purposes before the organization may conduct lotteries, the logical and reasonable conclusion must be that the primary activities referred to are activities other than the operation of a lottery. The Legislature thus limited its authorization to qualified organizations actually conducting activities for charitable and community betterment purposes. It is reasonable to assume that the Legislature intended to require that an organization actually conduct charitable and community betterment activities rather than merely express an intent to conduct them in the future before that organization will be authorized to operate a lottery.

It is argued that because the word "primary" was

used to describe the charitable and community betterment activities which must be conducted by an organization before it may legally operate a lottery, the Legislature intended that the operation of a lottery must be secondary or incidental to the "primary" activity of the organization. The Legislature failed to impose any specific restrictions as to the size or frequency of any lottery, and there is no reasonable or logical way of comparing or measuring the relative size of activities in such diverse and unrelated fields. The issue is not directly presented in this case, and we therefore do not pass on it.

The evidence in this case is undisputed that the sole function and activity of the City Betterment Corporation during its entire existence has been the organization and operation of the lotteries. The District Court specifically determined that an organization whose only activity has been the operation of a lottery is not an organization whose primary activities are conducted for charitable and community betterment purposes, and that the conduct or operation of a lottery may not be included as one of such an organization's primary activities. Those determinations were correct and are determinative of the appeal of City Betterment Corporation.

The State's and County's cross-appeal contends that the word "proceeds" used in both the constitutional amendment and the statute means gross proceeds rather than net proceeds. The constitutional amendment requires that lottery "proceeds" be used solely for charitable or community betterment purposes, and the statute adds the phrase "and the awarding of prizes to participants."

The term "proceeds" has been used in all kinds of contexts and in various situations has been interpreted as net or gross, depending upon the circumstances. The words and terms of a constitutional provision are to be interpreted and understood in their most natural and

obvious meaning. Ramsey v. County of Gage, 153 Neb. 24, 43 N. W. 2d 593. The use of the word "proceeds" and the accompanying phraseology in both the constitutional amendment and the statute would ordinarily require that it be interpreted in the same fashion in both. The State argues that the word "proceeds" was intended to mean gross proceeds and that the statutory addition of words permitting the awarding of prizes was intended to allow only that deduction from gross proceeds. If "proceeds" means gross proceeds in the Constitution, then the statutory provision for prizes would be unconstitutional, because it goes beyond the constitutional limitation. To interpret the word to mean gross proceeds in the statute is to assume that the Legislature intended to require that except for prizes, all property, goods, services, and other expenses of any lottery must be donated, including advertising and printing of the tickets. There is no indication of any such intent. If the Legislature had wanted to describe or restrict the kinds or types of expenses authorized to be deducted, it could have done so. The Legislature did not make any reference to expenses. The trial court's finding that reasonably necessary expenses may be incurred was clearly correct. The word "proceeds" in Article III, section 24, Constitution of Nebraska, and in section 28-964.03, R. R. S. 1943, means "net proceeds." Reasonable and necessary expenses incident to the organization and operation of a lottery may be paid from lottery proceeds.

Finally, the State and County contend that the District Court erred in holding that the term "promoter" in Article III, section 24, Constitution of Nebraska, means only the organization conducting the lottery. The State contends that anyone who advances money, sells tickets, secures financing, helps organize, manages, or in any other way helps to advance a lottery is a promoter of that lottery. It also contends that any person or firm performing any functions for a promoting

organization cannot profit or be paid for such services because of the constitutional prohibition against profit to the promoter. In essence, such a definition would mean that all services would have to be donated, including even the printing of lottery tickets. Any such interpretation would make it difficult, if not impossible, to hold a legal lottery except for a very small local lottery, and it could make dozens, or even hundreds, of helpful but unwary persons subject to criminal responsibility in the event legal boundaries were breeched. Logically and reasonably the term "promoter" refers to the person or organization legally responsible for the operation of the lottery.

Under Article III, section 24, Constitution of Nebraska, the word "promoter" of a lottery means only the persons or organizations legally responsible for conducting the lottery. It does not include individual employees of the organization or agents or independent contractors retained by the organization to provide services in the conduct of the lottery. Where the organization is a nonprofit corporation, the corporation is deemed to include the corporation's officers and directors.

The findings of fact and conclusions of law made by the District Court were correct in all respects. The judgment of the District Court is affirmed.

AFFIRMED.