REQUESTED BY: Dear Senator Johnson:
You have asked us several questions with respect to LB 152. We will answer your questions in the order they were asked.
In your first question you ask whether a `pickle' falls within the definition of a lottery as set forth in LB 152. LB 152 contains a three-part definition of the term `lottery' in section 1(3). That is the player agrees to pay something of value for chances differentiated by numbers, one or more of which will be designated the winning number. The winning chances are to be determined by a drawing or a method based on an element of chance. The holder is to receive something of value.
A `pickle' card is purchased, it contains numbers differentiating one card from another, the numbers are determined by a method based on the element of chance, that is, the specific card will be a winner if it so provides that it is drawn by chance by the person paying the money for the card. If it is a winning card, the player receives money. These acts satisfy the definition of a lottery as contained in section 1(3) of LB 152.
In your second question you ask whether churches and nonprofit organizations selling `pickles' to support their regular activities would preclude the use of pickle proceeds in the support of a church or church related school. ArticleIII, section 24, of the Constitution of the State of Nebraska in part provides:
 "The Legislature . . . may authorize and regulate other lotteries, raffles, and gift enterprises which are intended solely as business promotions or the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises. . . ."
The question to be determined is whether or not a church or church related school serves either a charitable or community betterment purpose. Some guidance exists in this area in that the Nebraska Supreme Court has held that the donation of money by will to `the Divinity School of Drake University' was a valid charitable testamentary disposition. Further, a number of cases have held that bequests to schools serve as appropriate charitable gifts. It may also be argued that schools serve a community betterment function in the training and education of children. It is clear, though, that furtherance of education, even where under public control and supported generally by taxation, is a charitable purpose. See School Dist. No. 70, Red WillowCounty v. Wood, 144 Neb. 241, 13 N.W.2d 153 (1944). It is clear under these and other cases in the State of Nebraska that the operation of or the donation of money to schools serves a charitable purpose. It is likewise clear that charitable gifts may be made to churches.
In In re Estate of Douglass, 94 Neb. 280,143 N.W. 299 (1913), the decedent had devised to the First Congressional Church Society of Seward the income from bank stock and specific real estate within the city. The real estate was subject to certain conditions. The court said:
 "We think it needless to multiply authorities. The gift to the church in question seems clearly to be a gift for charitable purposes. . . ."
The court in Douglass cited several cases to this effect. In essence they held that a church serves a broader purpose in the community than simply furthering its specific sectarian ideals, and thus is well within the parameters of charitable institutions to which gifts may be made.
We believe that the Nebraska Supreme Court if faced with the question would construe the constitutional provisions and the provisions of the current statutes, as well as the proposals of LB 152, to include churches within the organizations which are authorized to conduct raffles, lotteries, and gift enterprises.
In the second portion of your question you point to section 9 of LB 152 and Article III, section 24, which allows lotteries to be conducted by nonprofit organizations whose `primary activities are conducted for charitable or community betterment purposes.' You then ask whether this provision would prevent a church or labor union from selling `pickles' when their principal activities are the support of religion or provision of collective bargaining.
Substantially all of your questions with respect to the church activities have been answered in the preceding paragraphs. We have been unable to find any cases or statutory provisions which would expand the treatment given to churches and church related schools to labor organizations. The Supreme Court of the State of Nebraska in State v. CityBetterment Corp., 197 Neb. 575, 250 N.W.2d 601 (1977), stated:
 ". . . When the Legislature required that the `primary activities' of a qualified organization are to be conducted for charitable and community betterment purposes before the organization may conduct lotteries, the logical and reasonable conclusion must be that the primary activities referred to are activities other than the operation of a lottery. The Legislature thus limited its authorization to qualified organizations actually conducting activities for charitable and community betterment purposes. It is reasonable to assume that the Legislature intended to require that an organization actually conduct charitable and community betterment activities rather than merely express an intent to conduct them in the future before that organization will be authorized to operate a lottery."
The court went on, however, to specifically state that they were not answering in that case whether or not the organization's activities had to be primarily charitable and community betterment oriented and thus the conducting of the lottery only secondary in importance. It was not presented and was not decided.
 ". . . The Legislature failed to impose any specific restrictions as to the size or frequency of any lottery, and there is no reasonable or logical way of comparing or measuring the relative size of activities in such diverse and unrelated fields. . . ." Id. at 582.
This same situation exists under LB 152. No guidance is given for determining what primary activities means. It would appear, however, that churches would be exempt to the extent that their religious activities under the cases in Nebraska are considered charitable and thus without any prohibition as to whether their primary activities were for support of religion or not. On the question of labor unions, it would appear that, although similar reasoning might be utilized to describe their service as more broad based and thus charitable or for community betterment purposes, it would be appropriate to specify in the legislation the exact meaning of the term `primary.' As we have indicated, the court has not decided that issue. However, the court did point out the failure of the Legislature to specify any criteria that could be utilized in reaching that determination. For example, `primary' could mean greater than 50 per cent or it could mean primary as among several different activities if there were three, four, or more activities, or it could refer to specific monetary sums utilized or expended by a particular organization. Thus, we are unable to answer with specificity your question. The word `primary' as presently used in the statute and as it existed at the time ofCity Betterment Corp., supra, is an equivocal word having no definite standards set forth in the statutes. For that reason, we would suggest that more specific limitations might be appropriate than that now contained in LB 152.
You ask whether section 9 of LB 152 would prevent taverns and profit making enterprises from selling pickles or conducting other kinds of lotteries on behalf of a nonprofit organization. We believe not if they operate within the limitations expressed by section 9, that is, the expenses of such a raffle, lottery, or gift enterprise shall be limited to 25 per cent of the gross proceeds of such scheme and gross proceeds are defined to include such costs as printing, office expense, promotional expense, salaries of person employed to operate the scheme, rental or lease expense, or any fee paid to any person associated with the operation of such a scheme. The Nebraska Supreme Court inCity Betterment Corp., supra, stated that:
 ". . . It also contends that any person or firm performing any functions for a promoting organization cannot profit or be paid for such services because of the constitutional prohibition against profit to the promoter. In essence, such a definition would mean that all services would have to be donated, including even the printing of lottery tickets. Any such interpretation would make it difficult, if not impossible, to hold a legal lottery except for a very small local lottery, and it could make dozens, or even hundreds, of helpful but unwary persons subject to criminal responsibility in the event legal boundaries were breeched. . . ." Id. at 583, 584.
It seems clear from this ruling tavern owners and other profit making enterprises could sell `pickle' tickets as long as the expense prohibition contained within section 9 was strictly complied with.
In your final question you ask whether LB 152 entirely eliminates criminal sanctions for individuals who aid, are accessories to, or advance gambling activities such as touts, financiers, accountants, lessors of gambling parlors, etc. Such individuals would be subject to the same prosecution as the principals under the sections of the statutes relating to aiding and abetting, section 28-206, R.S.Supp., 1978, conspiracy provisions of sections 28-202 and 203, R.S.Supp., 1978, and section 28-204, R.S.Supp., 1978.