Jerome L. SNODGRASS, Plaintiff,

v.

ROBERTS DAIRY COMPANY, a corporation, also known as R.D.C., Inc., Defendant.

Civ. No. 77–0–230.

United States District Court, D. Nebraska.

April 24, 1979.

William A. Shuminsky and Timothy W. Shuminsky, Sioux City, Iowa, for plaintiff.

Harry L. Welch, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

On September 28, 1973, Jerome Snodgrass slipped and fell while delivering milk to the defendant's premises at 2901 Cuming Street in Omaha, Nebraska. Alleging injury due to the negligence of the Roberts Dairy Company, the plaintiff filed this diversity suit on July 25, 1977.

On August 16, 1977, the Roberts Dairy Company filed an answer. Among other defenses, the Roberts Dairy Company alleged that it was not a proper party defendant and that "no proper and sufficient service of process was had upon the defendant."

On September 28, 1977, the four year statute of limitations on tort claims arising within the State of Nebraska ran out. Neb. Rev.Stat. § 25–207 (Reissue 1975).

Presently before the Court are the defendant's motion to dismiss for lack of proper service of process and motion for summary judgment. Both of these motions are concerned with the timing of a dissolution of the Roberts Dairy Company and the assumption of that corporate name by a legally separate business entity. Central to the question of the validity of process is whether the plaintiff succeeded in serving the dissolved corporations at its last usual place of business despite his admitted ignorance of the fact of dissolution. A review of the underlying facts that bear upon these motions is essential before any disposition of these motions can take place.

### History of the Roberts Dairy Company

Prior to June of 1975, the Roberts Dairy Company was a corporation engaged in the production and sale of dairy products. Many of its customers associated the corporate name with desirable qualities in milk and milk products.

In its amended Articles of Incorporation, filed in October of 1944, the Roberts Dairy Company certified that its principal place of transacting business "shall be in the City of

Omaha," and that "the resident agent of the corporation is J. Gordon Roberts, in care of the Roberts Dairy Company, 2901 Cuming Street, Omaha, Nebraska."

According to the defendant's answers to interrogatories, the executive offices of the Roberts Dairy Company have been located in a number of different buildings in the last twenty-five years. From 1953 until 1969, the executive offices were located at 4469 Farnam Street. In 1969, the offices moved to 3929 Harney Street. During August of 1973, the executive offices again moved to 7000 West Center Road. All of these addresses are within Omaha, Nebraska.

The locations of the executive offices of the Roberts Dairy Company were apparently not always identical with the addresses of the corporation's registered office. Illustrative is a copy of a domestic corporation occupation tax report, filed on July 9, 1973, which states that the location of the Roberts Dairy Company's registered office was 2901 Cuming Street. Another document that has been presented to this Court for consideration suggests that the occupation tax report may have contained an error. In a domestic change of registered agent and registered office form, dated February 12, 1975, the principal office of the Roberts Dairy Company is identified as being located at 2901 Cuming Street, but the location of the registered office and the address of the registered agent are listed as 4469 Farnam Street. The application form requested that the address of the registered agent and office be changed from 4469 Farnam Street to 2901 Cuming.

Due to the financial difficulties of a parent corporation, a sale of the Roberts Dairy Company was planned in May of 1975. On May 31, 1975, the original Roberts Dairy Company transferred all of its assets, including the plant located at 2901 Cuming Street, to the Howard Foods Company for $2,642,000.00 in cash. The right to use the name "Roberts Dairy Company" was part of this sale of assets. No liabilities of the Roberts Dairy Company were assumed by Howard Foods. As part of the transaction, the Roberts Dairy Company changed its corporate name to R.D.C., Inc., and the Howard Foods Company adopted the name of "Roberts Dairy Company" as its new corporate title. The new Roberts Dairy Company's executive offices were established at 2901 Cuming Street, with its registered agent and office located at 4223 Center Street.

R.D.C., Inc. had a short period of existence. It never engaged in the dairy business and invested the cash received from the sale of the assets of the old Roberts Dairy Company pending distribution of the money to its shareholders. The corporate offices of R.D.C., Inc. were located at 7000 West Center Road from the time of the change of corporate name until dissolution. R.D.C., Inc. did no business at the plant at 2901 Cuming Street during its existence. On July 10, 1975, the shareholders of R.D.C., Inc. voted to dissolve the corporation. The articles of dissolution were eventually filed with the county clerk on November 12, 1975. No assignee, trustee or receiver was appointed to handle any of the assets of R.D.C., Inc.

*History of Present Lawsuit*

After the plaintiff retained counsel to prosecute this tort action, the plaintiff's attorney, who is engaged in the practice of law in Sioux City, Iowa, caused a letter to be written to the Nebraska Secretary of State. The letter, which was sent on July 19, 1977, asked whether Roberts Dairy was incorporated in the State of Nebraska. The Secretary of State replied that Roberts Dairy was a "Nebraska domestic corporation in good standing", and gave the address of the registered agent of the new Roberts Dairy Company. No reference was made to the changes in corporate name or the purchase of assets by Howard Foods. The Secretary of State obviously interpreted the request as one relating to the status of then-existing corporate entities rather than an inquiry into past records.

On the basis of this response, the plaintiff's attorney filed suit in this Court on July 25, 1977. The complaint, which listed

the defendant as "Roberts Dairy, a corporation", was served upon Jim Naufal, the treasurer of the new Roberts Dairy Company, at the plant at 2901 Cuming Street, in Omaha. On August 16, 1977, the defendant filed its answer, raising as defenses the lack of a proper party defendant and insufficient service of process.

On August 30, 1977, the plaintiff caused interrogatories to be served upon the defendant. The questions mainly inquired into the factual bases for the defenses raised in the answer. Concerned that the deadline for the statute of limitations was drawing near, the plaintiff obtained leave of Court to amend his complaint shortly thereafter. His amended complaint changed the defendant's name from "Roberts Dairy, a corporation" to "Roberts Dairy Company, a corporation."

The defendant answered the plaintiff's interrogatories on October 20, 1977, after receiving leave of Court to file such answers out of time. It was only at this juncture that the plaintiff realized the existence of the change of corporate names and the transfer of the assets of the dairy business. The plaintiff, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, moved to amend his complaint for a second time. The Court, unaware at the time of the statute of limitations problem, allowed plaintiff to amend his complaint to change the defendant from "Roberts Dairy Company, a corporation" to "Roberts Dairy Company, a corporation, also known as R.D.C., Inc."

The plaintiff subsequently obtained service of the complaint upon an officer of R.D.C., Inc., at his home address. This Court previously held that this service of process was ineffectual as it took place after the limitations period had run. However, as this Court recognized in its order of May 24, 1978, the original Roberts Dairy Company was "a dissolved corporation subject to suit if properly served with process under the provisions of Neb.Rev.Stat. § 25–515 (Reissue 1975)." Service upon a defunct business entity is obtainable under this Nebraska law if process is left "at the last usual place of business or office of such dissolved corporation" if no assignee, trustee, receiver or person having charge of its assets can be found. The Court allowed an extension of discovery concerning the location of the "last usual place of business or office" of R.D.C., Inc., and gave the defendant permission to reassert its motion to dismiss at the conclusion of this discovery period.

*Sufficiency of Service of Process*

■ A threshold issue that faces the Court is the defendant's power to assert a defense under Rule 12(b)(5) at this stage of the proceedings. Alleging that Roberts Dairy failed to preserve this objection when it filed an answer prior to its assertion of insufficiency of service in a Rule 12 motion, Snodgrass urges this Court to find a waiver within the meaning of Rule 12(h)(1) of the Federal Rules of Civil Procedure.

An examination of the filings in this litigation persuades the Court that no waiver took place. The defendant's answer contained the defense of insufficiency of service of process. Although no motion was filed until seven months after the responsive pleading, the Court holds that the service issue was preserved when the subject was raised in the answer. *Equitable Life Assurance Soc. v. Saftlas*, 35 F.Supp. 62, 63–64 (E.D.Pa.1940); *Young v. Aetna Life Insurance Co.*, 32 F.Supp. 389, 391 (E.D.Pa. 1940); *Pesci v. Vieser*, 1 Federal Rules Service 125 (D.N.J.1938). All rights to reassert this defense, subsequent to the Court-imposed discovery period concerning the defendant's "last usual place of business", were preserved by order of this Court. If the plaintiff is to prevail upon this motion, he must do so on the merits.

A judicial definition of the concept of a dissolved corporation's "last usual place of business" has not been framed by the state courts of Nebraska. Nor has a federal court faced such a question in a diversity suit governed by Nebraska law. An overview of the language of other state statutes involving service of process is a proper starting point for resolution of the problem of interpretation of § 25–515.

Such an overview demonstrates that the Nebraska legislature has employed very specific language in the drafting of laws concerning methods to obtain service upon business entities. Illustrative is Neb.Rev. Stat. § 25–511 (Reissue 1975), which provides that service upon a domestic corporation may be obtained by personal delivery of a summons upon an officer or managing agent of the corporation, or, "if none of the aforesaid can be found in the county, by a copy personally served upon the registered agent of the corporation or left at the registered office of the corporation within the state." This use of exact language with definite meanings is not limited to statutes concerning currently viable corporations. In the context of an attorney general's suit for involuntary dissolution of a corporation, the state legislature has provided for service by publication in the county "where the last-known registered office of the corporation is situated." Neb.Rev. Stat. § 21–2095 (Reissue 1977).

Given the availability of definite language to Nebraska's legislators and the actual use of terms with exact and easily definable meanings in other laws, the Court hesitates to impose an artificial and narrow meaning upon the language used in Neb. Rev.Stat. § 25–515 (Reissue 1975). It seems clear that the meaning of a dissolved corporation's "last usual place of business or office" should not be limited to an inquiry into the location of its former registered offices or agents. Nebraska's lawmakers could have used such exact language, but they did not do so. In fact, Nebraska's Business Corporation Act does not require that a registered office be maintained at a corporation's place of business. Neb.Rev. Stat. § 21–2011(1) (Reissue 1977). This Court's role is to interpret statutory law, and to arrive at a construction that comports with the common and ordinary meaning of words. Although the addresses of registered agents and offices are factors to be weighed in the process of ascertaining the location of a dissolved corporation's "last usual place of business", such facts are by no means conclusive.

Nor can the Court equate a corporation's principal place of business with the provisions of Neb.Rev.Stat. § 25–515. The state legislature has used such language in acts governing service upon unauthorized manufacturers and distributors of motor vehicles. Neb.Rev.Stat. § 25–530.04 (Reissue 1975) authorizes service by mail upon such a business entity "at the last-known principal place of business of the defendant." The Court declines to require service upon a dissolved corporation's principal place of business when the legislature has not imposed such a duty upon a plaintiff.

■ Words and terms are to be assigned a natural meaning. *State v. City Betterment Corp.*, 197 Neb. 575, 250 N.W.2d 601 (1977). Where a statute is capable of being construed in a number of different ways, " ' "the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will." ' " *Pettigrew v. Home Insurance Co.*, 191 Neb. 312, 314–15, 214 N.W.2d 920, 922 (1974).

■ After reviewing the evidence and applying these rules of statutory construction to the process statute involved here, the Court concludes that a business entity's "usual place of business" is equivalent to its physical plant. The defendant's place of manufacture and sale of goods constitutes its physical plant. As the Nebraska Supreme Court recognized in a case involving the "usual place of business" of a partnership, *Rosenbaum v. Hayden*, 22 Neb. 744, 36 N.W. 147 (1888), importance should be attached to the business's act of holding itself "out to the world as a firm doing business at a certain point." In an interpretation of the meaning of a defendant's "regular and established place of business" in the context of a federal venue statute in patent cases, one federal judge has stated that

what is meant by a regular and established place of business is one in which some substantial part of the business of the company or corporation shall be carried on; and this, in the case of any kind of business, would seem to me to be,

in a general way, the sale of the commodities which the defendant may offer to the public. In the case of a manufacturer it would be the sale of the product of [its] works.

*Weller v. Pennsylvania R. Co.*, 113 F. 502, 505 (D.Col.1902), cited in 8 Fletcher, *Cyclopedia of the Law of Private Corporations* § 4034 at 450 (1966).

■ The conclusion that a corporation's "usual place of business" is its manufacturing plant comports with the purpose of Neb. Rev.Stat. § 25–515. This law was enacted to facilitate service of process upon dissolved corporations. The remaining alternative to service at the physical plant is service by publication. The former method is better suited for insuring that a defendant obtains actual notice of the pending of a lawsuit. The Court cannot believe that the Nebraska legislature, by virtue of its enactment of this statute, has voiced a preference for service in a newspaper as opposed to service at a place where a corporation formerly conducted business. Moreover, the law is written in the disjunctive: service is proper if a summons is left at a dissolved corporation's "last usual place of business or office." The word "or" is a common way of expressing alternatives. *State v. Norfolk Live Stock Sales Co.*, 178 Neb. 87, 89, 132 N.W.2d 302, 304 (1964). The Court believes that service is proper at either the dissolved corporation's physical plant or its corporate offices.

■ The defendant argues that the plant located on Cuming Street cannot be the last usual place of business of the old Roberts Dairy Co., as the only place of business of R.D.C., Inc., was located at 7000 West Center Road. While this argument has some appeal, the Court believes that the establishment of a business office for a limited period of time, with the purpose of winding up a business the assets of which have already been transferred, does not constitute a "usual" place of regular business. While the old Roberts Dairy survived the purchase by Howard Foods, the Court does not feel that the disbursement of funds received in a sale of assets is a usual function of a dairy business. A change in the location of the old Roberts Dairy Co. cannot be used as a shield to ward off would-be plaintiffs, even though the shift was not undertaken with any fraudulent purpose. The termination of the existence of a corporation is the last chapter in the life of a business, and should not be considered part of the usual and regular course of business engaged in by that entity under this statute.

## Sufficiency of Process

■ A review of the defendant's answer persuades the Court that the defendant has waived its right to contest the sufficiency of process in a Rule 12(b)(4) motion. The answer to plaintiff's complaint does not raise sufficiency of process as a defense. The Court does not believe that the portion of the answer that refers to the lack of "proper parties defendant" constitutes a preservation of the issue that the defendant now seeks to raise. This failure to include the defense in a responsive pleading is a waiver under Rule 12(h)(1) of the Federal Rules of Civil Procedure.

■ Even if the Court were to address the issue upon the merits, an amendment of process under Rule 4(h) or an amendment of the complaint pursuant to Rule 15(c) would be appropriate. The old Roberts Dairy Company had notice of the institution of the action, as defense counsel represents both the old corporation and the new business entity that adopted the name of Roberts Dairy. No prejudice is alleged, and none would appear to exist. The defendant knew of the mistake in identity at the time of the filing of the answer. The Court notes that defense counsel also represents the insurance carrier that will have to pay if the defendant is eventually found liable. Moreover, the evidence reflects an identity between the officers of the new and old corporations. Jim Naufal, the treasurer of the new Roberts Dairy Company and the official upon whom process was served in July of 1977, held the same corporate office for a period of time with the old Roberts Dairy Company. The liberal provisions of

the Federal Rules of Civil Procedure would be unduly restricted if the Court were to grant the defendant's Rule 12(b)(4) motion under these facts.

*Summary Judgment*

█ Taking the position that service was properly obtained only upon the new Roberts Dairy Company, the defendant has filed a motion for summary judgment. Essentially, the new Roberts Dairy Company argues that its purchase of assets from the old corporation did not entail the transfer of liabilities as well. The form of the agreement allegedly insulates the new company from lawsuits that arose prior to the transfer of assets.

The Court notes that the plaintiff, in his resistance to the summary judgment motion, states that he "has never desired to prosecute this case against the present Roberts Dairy Company, but only desires to have his case heard on the merits against the original Roberts Dairy Company." As the Court has already held that the old Roberts Dairy Company's "last usual place of business" has been properly served, the Court will grant the motion for summary judgment, in accordance with the wishes of the plaintiff, to the extent that the complaint can be construed as stating a cause of action against the new Roberts Dairy Company, formerly known as the Howard Foods Company.

An order has been filed contemporaneously herewith in accordance with this Memorandum Opinion.