REQUESTED BY: Senator James E. Pappas Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Pappas:
You have asked for our opinion on two matters in connection with LB 336. You first ask for our opinion on the constitutionality of the distribution of net proceeds provided for in the bill. Secondly, you ask our opinion on the constitutionality of the state operating a lottery without submitting the question to the voters. We will answer your questions in the order they are asked.
Section 10 provides that 45 percent of the gross proceeds shall be used to award prizes and at least 30 percent shall be paid to the State Lottery Community Betterment Fund. Section 31 specifies that money in the State Lottery Community Betterment Fund shall be appropriated for the payment of prizes, for the repayment of money appropriated by the Legislature, for reasonably necessary expenses of the commission, and to aid incorporated cities, villages, counties, and school districts for community betterment purposes. Section 32 provides that the commissioner shall promulgate rules and regulations delineating the procedures by which aid to incorporated cities, villages, counties, and school districts shall be distributed. That section continues:
 The rules and regulations shall provide that financial aid be distributed to such cities, villages, counties, and school districts. One-third of the money for financial aid to such political subdivisions shall be appropriated to the State Department of Education which shall distribute such amount to school districts in the manner provided by sections 79-1331 to 79-1344. The money appropriated to the department shall be considered as separate and apart from any other revenue appropriated to the department by the Legislature which is derived from any other source. Two-thirds of the money for financial aid shall be distributed to the counties in the state on a per capita basis, based upon the most recent federal decennial census, and each county shall distribute such money to the cities and villages within its boundaries on a per capital basis.
It is thus clear that one-third of the money derived from the operation of a lottery shall be appropriated to school districts and two-thirds of the money shall be appropriated to cities and villages. We believe that this distribution formula fails for being an improper classification. We point to State ex rel. Douglas v.Marsh, 207 Neb. 598, 300 N.W.2d 181 (1980). In that case the Supreme Court was considering the constitutionality of the distributional formula established under LB 882, Eighty-sixth Legislature, Second Session, 1980. The court, in discussing the granting of state aid to political subdivisions said:
 There is no absolute constitutional prohibition against the state granting aid to governmental subdivisions. The formula for granting aid, however, must be of such a nature that similar governmental subdivisions are treated in a similar manner and, as circumstances change, adjustments between governmental subdivisions are made.
In State ex rel. Douglas v. Marsh, supra, the court was dealing with the question of frozen classifications with respect to the manner of distribution. It was also, however, dealing with the reasonableness of the classification and the basis upon which they were established.
The Supreme Court had previously dealt with this question in City of Scottsbluff v. Tiemann, 185 Neb. 256,175 N.W.2d 74 (1970), a case in which an act had been adopted to require the establishment of municipal courts in certain cities in the state. Cities having more than 13,000 population located in a county having more than 33,000 inhabitants according to the 1960 federal census were required to establish such courts. The court found the classification to be closed and then went on to discuss the question of whether or not the classification there used was reasonable. The court said:
 Since the newly created courts in the act are primarily for the benefit of the city, there would appear to be no sound reason for tieing their mandatory creation to county population. But, if we were to assume that such a tied-in correlation is permissible, it does not appear a reasonable one in the present case. We can detect no scheme or apparent legal relationship to the purposes of the act in the proportions present between the city and the county populations. They appear to be vicarious, irrational, and totally unrelated. The attempt to explain it perhaps even defies speculation. There is not even an attempt to set up proportional city and county populations. Nor does any peculiar factor appear which would tie in the need as a class for a municipal court in a city of 13,377 with a county population of over 33,000 with the need for a municipal court in a city of 25,742 in a county of similar population.
185 Neb. at 268.
Two examples will suffice, we believe, to show the invalidity of the purported classification herein. In the first, one could look to Banner County and assume its population as 1,000 inhabitants. Secondly, one could look to Douglas County assume its population of approximately 375,000. Further, assuming one million dollars in revenue were to be distributed and there were one million inhabitants in the state, Banner County would receive $1,000 all of which would go to the single city having 30 inhabitants, thus resulting in approximately $33.00 per inhabitant. Douglas County on the other hand would receive $375,000 dollars and, while there are a few inhabitants in Douglas County outside of the city limits, the per capita distribution to Douglas County would be in the neighborhood of $1.00 per inhabitant. In the second example, one could have similar sized towns in two counties of differing populations. The amount those towns would receive would vary according to the county population and also according to the population of the other towns within each county.
Once again, since the benefit of this act seems to be directed toward cities in the accomplishment of `city betterment purposes,' we fail to see how these differing results could be based on any reasonable classification. As the courts have recognized, it is within the power of the Legislature to classify for purposes of legislation. However, those classifications must rest on real and substantial differences and not be illusory or so arbitrary and capricious as to be unfair.
In your second question you ask whether or not the Legislature may constitutionally commence operating a state lottery without a vote of the people. Article III, Section 24, of the Constitution in part provides:
 The Legislature shall not authorize any game of chance, nor any lottery, or gift enterprise where the consideration for a chance to participate involves the payment of money for the purchase of property, services, chance or admission ticket, or requires an expenditure of substantial effort or time; Provided, that it may authorize and regulate other lotteries, raffles, and gift enterprises which are intended solely as business promotions or the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises.
This section of the Constitution authorizes the Legislature within the limits set forth therein to authorize and regulate lotteries, raffles, and gift enterprises by statute. This has been recognized by the Nebraska Supreme Court in State v. City Betterment Corporation, 197 Neb. 575,250 N.W.2d 601 (1977). The court said:
 The Constitution of Nebraska still forbids any lottery except a lottery specifically authorized by the Legislature within the limitations of Article III, section 24. Under the 1968 amendment, the Legislature cannot authorize any lottery beyond the specific scope of the constitutional permission.
 The Legislature may refuse to authorize any lottery, or it may impose limits or restrictions, or qualifications upon the operation of a lottery it authorizes.
The court went on to find in City Betterment Corporation
that a lottery conducted by an organization whose primary activities were to conduct a lottery was in violation of the statute then in effect.
In analyzing Article III, Section 24, it is clear that the Legislature may authorize and regulate lotteries which are intended for a business promotion or where the proceeds are used for charitable and community betterment purposes and profits do not inure to the promoter of the lottery, raffle, or gift enterprise. None of these prohibitions mandate a vote of the people prior to the establishment of such a lottery. We are unaware of any other constitutional provision which would require a vote of the people in such a situation.
Sincerely yours, PAUL L. DOUGLAS Attorney General Patrick T. O'Brien Assistant Attorney General