REQUESTED BY: M. Berri Balka, State Tax Commissioner
You have requested our opinion as to whether the proposed operation of a form of pickle card dispensing device is authorized under the provisions of the Nebraska Pickle Card Lottery Act, Neb. Rev. Stat. §§ 9-301 to 9-356 (1991 and Cum. Supp. 1996) [the "Act"]. You indicate that the Department's Charitable Gaming Division has been approached regarding a proposal to operate a pickle card dispensing device capable of scanning a bar code on pickle cards to display the contents of a dispensed card on a video screen. Based on the Department's concerns that the video display feature of the proposed pickle card dispensing device may not be permitted under current statutes, you have asked us to address whether the use of such devices would be consistent with the Act.
I. Proposed Operation of the Video Display Pickle Card Dispensing Device.
While still conceptual in nature, the video display pickle card dispensing device would dispense regularly manufactured pickle cards. The appearance, security features, randomness, and method of play would essentially be the same as for other pickle cards currently being marketed in the state, with one major distinguishing feature. That feature is a bar code placed on the pickle card which the vending device would be capable of scanning as the card is dispensed. The vending device would read the bar code on the outside of each pickle card and, within seconds, display on a video display screen incorporated into the device whether or not the pickle card is a winner and the amount won, prior to the tabs actually being removed by the player.
The operation of the device will have no effect on whether a player wins or loses; that determination is ultimately made solely by the pickle card itself. The device will not contain a random number generator, nor will it otherwise generate a pickle card, but will merely dispense pre-manufactured pickle cards upon the insertion of cash into the machine by the player. The pickle card is dropped into a tray for the player to retrieve and remove the tabs contained on the card to reveal symbols which determine whether the card is a winner. If the particular card is a winner, it must be presented to a cashier or attendant for redemption. The device will not be capable of tracking winnings or allowing replays of amounts won. Nor will the device itself pay out on winning pickle cards.
The potential manufacturer of the device has indicated that the video display screen will operate as a visual aid and is not necessarily needed to play the game. The device is intended to be used with or without the video display at the player's option. For example, once the player inserts cash into the bill validator, the amount deposited will be displayed on the video monitor. Two buttons, "dispense" or "dispense/view", will then flash. The — player will choose to either dispense the pickle card only or dispense the pickle card and use the video enhancement aid by pressing the appropriate button. The potential manufacturer has indicated that should the video display results not agree with the pickle card regarding whether it is a winner, the pickle card itself would control. The cashier/attendant will not have the capability of scanning the pickle card thereby alleviating the need to break it open. While the display screen is not necessarily needed to play the game, the potential manufacturer has indicated that the display would be a visual aid useful to those who are visually impaired due to age or disability.
II. Issue Presented.
Neb. Rev. Stat. § 9-346(2) (Cum. Supp. 1996), which sets forth requirements for the determination of winning pickle cards, provides, in pertinent part, as follows:
 The winning chances of any pickle card shall not be determined or otherwise known until after its purchase and only upon opening, pulling, detaching, breaking open, or otherwise removing the tab or tabs to clearly reveal or otherwise appropriately revealing the combination. (emphasis added).
In addition, Neb. Rev. Stat. § 9-337 (1991), which sets forth construction standards for pickle cards, provides, in part:
 (1) Pickle cards shall be constructed so that it is impossible to determine the covered or concealed number, letter, symbol, configuration, or combination thereof on the pickle card until it has been dispensed to and opened by the player, by any method or device, including, but not limited to, the use of marking, variance in size, variance in paper fiber, or light.
 (2) All pickle cards shall be constructed to ensure that, when offered to the public, the pickle card is virtually opaque and free of security defects so that winning pickle cards cannot be determined, prior to being opened, through the use of high-intensity lights or any other method.
(emphasis added).
You indicate that the physical pickle card ticket to be dispensed by the device appears to comply with the restrictions and limitations imposed under the Act, and that this "aspect of the product is not of primary concern." Your question then is "whether the use of the bar code feature and the display mechanism incorporated into the device prevents it from being used to market pickle cards under the above-referenced statutory provisions."
III. Discussion.
Resolution of the question presented requires us to attempt to interpret the intent of the Legislature in enacting the provisions outlining the conduct of pickle card lotteries. In doing so, certain basic rules of statutory construction must be considered.
A fundamental principle of statutory construction is to attempt to ascertain legislative intent and to give effect to that intent. County of Lancaster v. Maser, 224 Neb. 566,400 N.W.2d 238 (1987). In construing a statute, the language used by the Legislature should be considered to determine its intent.Sorenson v Meyer, 220 Neb. 457, 370 N.W.2d 173 (1985). In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. Hickenbottom v, Hickenbottom, 239 Neb. 579,477 N.W.2d 8 (1991).
It is generally recognized that statutes which allow gambling activity are subject to strict construction. Aicardi v.Alabama, 86 U.S. (19 Wall.) 635 (1873); see West Indies, Inc.v. First Nat'l Bank of Nevada, 67 Nev. 13, 214 P.2d 144 (1950). (gambling statute, granting special privileges, must be strictly construed). The Nebraska Supreme Court, construing the constitutional provision authorizing the Legislature to permit lotteries for charitable or community betterment purposes, has stated:
 Traditionally in Nebraska lotteries have been forbidden. The Constitution of Nebraska still forbids any lottery except a lottery specifically authorized by the Legislature within the limitations of Article III, section 24. Under the 1968 amendment, the Legislature cannot authorize any lottery beyond the specific scope of the constitutional permission. The Legislature may refuse to authorize any lottery, or it may impose limits or restrictions, or qualifications upon the operation of a lottery it authorizes. . . . In Nebraska . . ., unless a lottery is conducted and operated within the specific limits and terms of a statutory authorization, it is illegal.
State v. City Betterment Corp., 197 Neb. 575, 580-81,250 N.W.2d 601, 604 (1977) (emphasis added).
Applying these principles to the issue presented, it is our opinion that the incorporation into and use of the bar code feature and video display mechanism as part of the proposed pickle card dispensing device is inconsistent with current provisions of the Act. We reach this conclusion for several reasons.
First, § 9-346(2) provides that "[t]he winning chances of any pickle card shall not be determined or otherwise known until after its purchase and only upon opening, pulling, detaching, breaking open, or otherwise removing the tab or tabs to clearly reveal or otherwise appropriately revealing the combination." The video display feature of the proposed device appears to be inconsistent with this provision, in that it would reveal the contents of the pickle card prior to the actual physical removal of the tab or tabs on the card.
Second, § 9-337(2) provides that pickle cards must "be constructed so that it is impossible to determine the covered or concealed number, letter, symbol, configuration, or combination thereof on the pickle card until it has been dispensed to andopened by the player, by any method or device, including, but not limited to, the use of marking, variance in size, variance in paper fiber, or light." (emphasis added). This provision appears to preclude use of the "bar code" feature on the pickle card to the extent that it permits scanning and display of the contents of the card, thus allowing determination of the card's contents prior to the card being opened by the player.
Third, § 9-337(2) requires that pickle cards be constructed in such a manner that "winning pickle cards cannot be determined, prior to being opened, through the use of high-intensity lights or by any other method. (emphasis added). Again, the requirement that winning pickle cards not be capable of determination prior to opening, appears inconsistent with the use of the "bar code" feature, as it would allow display of the contents of the card and determination of the card's contents prior to the card being opened by the player.
Finally, you note that the Department has previously "advised other manufacturers of similar types of pickle card dispensing devices (with video display capabilities) that because these type of products appeared to incorporate a technological concept (video enhancement) that was not contemplated in the Nebraska Pickle Card Lottery Act and the Department's administrative regulations on pickle cards, [the Department] has been reluctant to authorize the use of such devices without clear legislative or judicial direction relative to the legality of this type of product." The interpretation of statutes by an administrative agency charged with their enforcement, while not controlling, is entitled to weight. Vulcraft v. Karnes, 229 Neb. 676,428 N.W.2d 505 (1988). We concur with the Department's view that use of the proposed device does not appear consistent with existing provisions of the Nebraska Pickle Card Lottery Act.
IV. Conclusion.
For the reasons stated above, it is our opinion that the incorporation into and use of the bar code feature and video display mechanism as part of the proposed pickle card dispensing device is inconsistent with current provisions of the Nebraska Pickle Card Lottery Act. We do not doubt that increased competition from other forms of gambling has adversely impacted charitable organizations which utilize pickle card revenues to fund their activities. We believe, however, that the proposed pickle card dispensing device is not authorized due to limitations presently established by the Legislature on the conduct of pickle card lotteries. In view of the strict construction to be applied to statutes authorizing gambling activity, we conclude that legislative action is required before pickle card dispensing devices of this nature may legally be used in Nebraska.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
APPROVED BY:
Don Stenberg
DON STENBERG, Attorney General